1

2                          Chief Magistrate Judge Brian A. Tsuchida

3

4

5

6

7             UNITED STATES DISTRICT COURT FOR THE

8              WESTERN DISTRICT OF WASHINGTON

9                       AT SEATTLE

10

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.    MJ20-451 |
| Plaintiff | COMPLAINT for VIOLATIONS OF |
| v. | Title 18, United States Code, Sections 2, 1343, & 1957(a) |
| MUKUND MOHAN, | |
| Defendant. | |

BEFORE, Chief Magistrate Judge Brian A. Tsuchida, United States Magistrate Judge, U. S. Courthouse, Seattle, Washington.

The undersigned complainant being duly sworn states:

**<u>COUNT ONE</u>**

**(Wire Fraud)**

From in or around April 2020 through in or around June 2020, at Seattle, in the Western District of Washington and elsewhere, MUKUND MOHAN, the defendant, knowingly devised and intended to devise a scheme and artifice to defraud the United States, and to obtain money and property by means of false and fraudulent pretenses, representations and promises, and attempted to do so.

A. <u>Manner and Means</u>

1.    It was part of the scheme that MOHAN submitted fraudulent loan

COMPLAINT/*United States v. Mukund Mohan* - 1

applications to Financial Institutions 1, 2, 3 and 4, seeking millions of dollars in funds through the Paycheck Protection Program ("PPP"), on behalf of Zuput Inc. ("Zuput"), Zigantic LLC ("Zigantic"), GitGrow Inc. ("GitGrow"), Vangal Inc. ("Vangal"), and Expect Success Inc. ("Expect Success").

2.    It was further part of the scheme to defraud that MOHAN submitted a fraudulent loan application to Financial Institution 5, seeking approximately $431,250 in funds through the PPP on behalf of Mahenjo Inc. ("Mahenjo").

3.    In support of Mahenjo's fraudulent loan application, MOHAN made numerous false and misleading statements, including, but not limited to:

a.    That, on February 15, 2020, Mahenjo was in operation and had employees for whom it paid salaries and payroll taxes or paid independent contractors;

b.    That, in 2019, its payroll expenses were more than $2.3 million;

c.    That Mahenjo's average monthly payroll expenses were at least $172,250; and

d.    That Mahenjo's owner, MOHAN, was not the owner of any other business and did not manage any other business.

4.    In further support of Mahenjo's fraudulent loan application, MOHAN submitted fake and altered documents, including fake federal tax filings and altered incorporation documents.

B. Execution

On or about June 4, 2020, at Clyde Hill, in the Western District of Washington and elsewhere, MOHAN, for the purpose of executing the scheme described above transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, an interstate wire from the State of Washington to the State of California as part of the Fedwire transfer in the amount of $431,250 from Financial Institution 5's bank account to Mahenjo's JP Morgan Chase ("JPMC") bank account.

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   All in violation of Title 18, United States Code, Sections 1343 and 2.

2   ## COUNT TWO

3   ### (Money Laundering)

4   On or around May 26, 2020, at Clyde Hill, and elsewhere, in the Western District
5   of Washington, MOHAN did knowingly cause and engage in, and attempt to cause and
6   engage in, the following monetary transaction by, through, and to a financial institution,
7   affecting interstate commerce, in criminally derived property of a value greater than
8   $10,000, that is, the transfer of $50,000 from Zigantic's bank account at Azlo Business
9   Inc. ("Azlo") with account number ending in 3419 to MOHAN's personal brokerage
10  account at Robinhood with account number ending in 4609, such property having been
11  derived from a specified unlawful activity, namely, wire fraud in violation of Title 18,
12  United States Code, Section 1343, and bank fraud in violation of Title 18, United States
13  Code, Section 1344(2).

14  All in violation of Title 18, United States Code, Sections 1957(a) and 2.

15  And the complainant states that this Complaint is based on the following
16  information:

17  I, JAMES SHIELDS, being first duly sworn on oath, depose and say:

18  1.      I am a Senior Special Agent with the Federal Housing Finance Agency –
19  Office of Inspector General ("FHFA-OIG").   I have been employed as a Senior
20  Special Agent of the FHFA-OIG since January 2013.   I have received basic federal law
21  enforcement training, including at the Federal Law Enforcement Training Center, as well
22  as other specialized federal law enforcement training.   I currently hold Certified Fraud
23  Examiner and Accredited Mortgage Professional certifications.   I have investigated
24  violations of federal statutes, including wire fraud, mail fraud, bank fraud, money
25  laundering, and theft of government and public money.   I have been a sworn law
26  enforcement officer during all times herein.

27  2.      The information contained in this Complaint is the result of my own
28  investigation as well as information provided to me by others, including other investigators

COMPLAINT/*United States v. Mukund Mohan* - 3

and law enforcement officers.  In each instance when I recite information from such others, I have gained that information either by talking directly to such investigators and law enforcement officers or reviewing written reports of their investigation, or both.  This Complaint accurately summarizes some of the evidence I discovered during my investigation; it does not, however, contain every detail known to me about the investigation.

## FACTS ESTABLISHING PROBABLE CAUSE

### *The Paycheck Protection Program*

3.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic.  One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the PPP.  In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

4.      In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business.  The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.  In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees.  These figures are used to calculate the amount of money the small business is eligible to receive under the PPP.  In addition, businesses applying for a PPP loan must provide documentation showing their payroll expenses.

5.      A PPP loan application must be processed by a participating lender, such as a financial institution.  If a PPP loan application is approved, the participating lender funds the PPP loan using its own monies, which are 100% guaranteed by Small Business Administration (SBA).  Data from the application, including information about the

COMPLAINT/*United States v. Mukund Mohan* - 4

borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan.

6.      PPP loan proceeds may only be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities.  The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time and uses a certain percentage of the PPP loan proceeds on payroll expenses.

*MUKUND MOHAN*

7.      MUKUND MOHAN is a United States citizen residing in Clyde Hill, Washington.  MOHAN is the Chief Technology Officer at BuildDirect.  Based on his social media presence, MOHAN also purports to be a successful serial entrepreneur focused on tech startups.

*Fraudulent PPP Loan Applications Submitted*
*on Behalf of Zuput, Zigantic, GitGrow, Vangal, and Expect Success*

8.      As described further below, evidence gathered in the investigation demonstrates that, from in or around April 2020 through in or around June 2020, MOHAN submitted, or caused to be submitted, eight fraudulent loan applications to five different financial institutions in order to obtain funds through the PPP.

9.      The first seven of the eight fraudulent PPP loan applications are summarized in the following chart:

| Applicant | Amount Sought | Lender | Approx. Date of Application | Status |
|---|---|---|---|---|
| Zuput Inc. | $150,000 | Financial Institution 1 | April 26, 2020 | Approved |
| Zuput Inc. | $223,727 | Financial Institution 2 | May 1, 2020 | Canceled |
| Zigantic LLC | $ 304,830 | Financial Institution 2 | May 1, 2020 | Approved |
| GitGrow Inc. | $506,277 | Financial Institution 2 | May 2, 2020 | Approved |

COMPLAINT/*United States v. Mukund Mohan* - 5

| Vangal Inc. | $1,728,398 | Financial Institution 2 | May 5, 2020 | Withdrawn |
| Expect Success Inc. | $1,794,700 | Financial Institution 3 | May 5, 2020 | Canceled |
| Expect Success Inc. | $394,000 | Financial Institution 4 | May 7, 2020 | Approved |

10.     Based on the investigation, Financial Institutions 1 through 4 are federally insured financial institutions, members of the Federal Home Loan Bank System, and have participated as lenders in the PPP.

11.     According to records obtained from Financial Institutions 1 through 4, MOHAN represented that he is the Founder and/or Chief Executive Officer of Zuput, GitGrow, Vangal, and Expect Success, and that his wife is the Founder of Zigantic.

12.     According to records obtained by Financial Institutions 1 through 4, MOHAN also represented that Zuput, Zigantic, and GitGrow had the same business address ("Address 1"), and that Vangal and Expect Success had the same business address ("Address 2").  Address 1 and Address 2 are in Clyde Hill, Washington.  Based on records obtained from mortgage lenders, records obtained from Financial Institutions 1 through 4, open source research, and surveillance conducted by federal agents, Address 1 and Address 2 are adjacent residential properties, not commercial properties with office space.  In fact, MOHAN currently resides at Address 1 with his family.  MOHAN previously resided at Address 2.

13.     MOHAN represented to Financial Institution 2 that Zuput had filed a Form 940, Employer's Annual Federal Unemployment Tax Return, with the Internal Revenue Service ("IRS") in 2019, but MOHAN did not actually submit a copy in support of that loan application because it was ultimately canceled.  MOHAN submitted, or caused to be submitted, a Form 940 with each of the six other PPP loan applications.  A review of IRS records revealed these Forms 940 to be fake:  none of the returns had been filed with the IRS and the amounts of tax deposits reported on these Forms 940 were not paid to the IRS.

14.     These seven PPP loan applications also contained materially false and misleading statements, including, but not limited to, that, on February 15, 2020, each applicant was in operation and had employees for whom it paid salaries and payroll taxes or paid independent contractors:

   a.  As explained above, a review of IRS records revealed that these applicants did not pay federal payroll taxes as of February 15, 2020.

   b.  A review of Washington State Employment Security Department ("ESD") records revealed that there is no record of these applicants having paid any employee wages or payroll taxes.

   c.  In addition, records obtained from the Washington State Department of Revenue ("DoR") revealed that none of these applicants had registered with DoR or applied for a business license, with the exception of Zuput.

   d.  In the case of Zuput, MOHAN registered and applied for a business license on or about April 26, 2020, which is on or about the same date MOHAN submitted Zuput's PPP loan application to Financial Institution 1. The information MOHAN provided in Zuput's business license application to DoR, however, was inconsistent with that which he provided in Zuput's PPP loan application that same day. MOHAN told Financial Institution 1 that Zuput hired its first employee in April 2017 and that, by September 2019, Zuput had hired 24 additional employees; MOHAN told DoR that Zuput hired its first employee in October 2019 and first paid that employee wages in November 2019.

*Fraudulent PPP Loan Application Submitted on Behalf of Mahenjo*

15.     Evidence gathered in the investigation demonstrates that, in addition to the seven fraudulent loan applications described above, MOHAN submitted an eighth fraudulent PPP loan application.

16.     According to an employee of Wyoming Corporate Services, Inc. ("WCS") ("WCS Employee 1"), whom I interviewed in June 2020, WCS was in the business of

incorporating and selling corporate entities.  WCS incorporated corporate entities and then placed them on a shelf to "age" because "shelf companies" or "aged corporations" are more valuable and WCS can sell them for more money.  Mahenjo was one of these shelf companies or aged corporations.

17.     According to WCS Employee 1,  and as corroborated by contemporaneous records obtained from WCS, on or about December 28, 2017, Harvard Business Services, Inc. ("HBS") incorporated a company named Mahenjo and appointed an individual with the initials SKD as Mahenjo's initial director.   In or about December 2018, SKD sold Mahenjo to WCS.  WCS later marketed it for sale on the Internet as an aged company.  On or about May 22, 2020, an individual who identified himself as MOHAN, purchased Mahenjo from WCS on the Internet.

18.     According to WCS Employee 1, Mahenjo was a "shelf company" that did not have business activities or employees from December 2018 (when WCS purchased Mahenjo from SKD) through at least May 22, 2020 (when MOHAN purchased Mahenjo from WCS).

19.     According to records obtained from Financial Institution 5, on June 3, 2020, MOHAN applied to Financial Institution 5 for a PPP loan on behalf of Mahenjo for $431,250.

20.     Financial Institution 5 is a federally insured financial institution, a member of the Federal Home Loan Bank System, and has participated as a lender in the PPP.

21.     Based on records obtained from Financial Institution 5, MOHAN completed and signed a PPP Borrower Application Form on behalf of Mahenjo.  The PPP Borrower Application Form represented that Mahenjo had 24 employees, that its average monthly payroll was $172,500, and that the purpose of the PPP loan was to cover its payroll.  MOHAN represented that Mahenjo's offices were located at Address 2.

22.     MOHAN made several certifications, including that Mahenjo "was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors."

COMPLAINT/*United States v. Mukund Mohan* - 8

23.     MOHAN was also asked, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business? If yes, list all such businesses and describe the relationship on a separate sheet identified as addendum A."  MOHAN responded "No."

24.     Based on records obtained from Financial Institution 5, MOHAN submitted several documents in support of Mahenjo's PPP loan application, including:

    a.  IRS Form 940 for 2019, in which he represented that Mahenjo had paid $2,376,500 to its employees in 2019.  MOHAN signed the form and dated his signature March 29, 2020 (which is nearly two months before MOHAN purchased Mahenjo from WCS).

    b.  Two payroll reports for the date range February 1, 2020 through February 29, 2020, in which he represented that Mahenjo had 24 employees and that its annual payroll expense was $188,291.67.  The payroll reports were purportedly created on March 12, 2020 (which is over two months before MOHAN purchased Mahenjo from WCS).

    c.  A copy of Mahenjo's purported incorporation documents. The version MOHAN submitted to Financial Institution 5 stated that Mahenjo was incorporated on December 28, 2017 and that, at the time it was incorporated, HBS appointed MOHAN as Mahenjo's initial director.

    d.  A letter from HBS to MOHAN purporting to notify MOHAN of Mahenjo's EIN.  The letter is dated February 12, 2018 (which is over two years before he purchased Mahenjo from WCS).

25.     MOHAN falsely certified that Mahenjo "was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors."  As explained above, Mahenjo was a "shelf company" and did not have business activities or employees from at least December 2018 (when WCS purchased the company from SKD) through at least May 22, 2020 (when MOHAN purchased the company online from WCS).

COMPLAINT/*United States v. Mukund Mohan* - 9

26.     MOHAN's statements that: (i) in 2019, Mahenjo's payroll expenses were more than $2.3 million, and (ii) Mahenjo's average monthly payroll expenses were at least $172,250, were also materially false and misleading.  Records obtained from WCS and ESD reveal that, in 2019 and 2020, Mahenjo did not have employees and did not pay employee wages or payroll taxes.

27.     MOHAN's representation that he was not the owner of any other business and did not manage any other business, was also false and misleading.  In truth, MOHAN owned at least three other businesses, namely Zuput, GitGrow, and Expect Success. MOHAN's false and misleading representation had the effect of concealing his ownership of companies that had already applied for and received over $1 million in PPP loans.

28.     A review of IRS records revealed the Form 940 that MOHAN submitted to Financial Institution 5 to be fake: the return had not been filed with the IRS and the amounts of tax deposits reported on the Form 940 were not paid to the IRS.  Moreover, as explained above, MOHAN purported to sign Mahenjo's Form 940 for 2019, approximately two months before he purchased Mahenjo.

29.     Evidence gathered in the investigation demonstrates that MOHAN falsified another document that he submitted in support of Mahenjo's PPP loan application: the letter from HBS to MOHAN purporting to provide information about Mahenjo's EIN.  The letter is dated February 12, 2018, which is over two years before MOHAN purchased Mahenjo from WCS.  The falsified letter was misleading in that it indicated that MOHAN owned and controlled Mahenjo in 2018 when, in truth, he did not.

30.     Based on a comparison of records obtained from WCS and Financial Institution 5, the incorporation documents MOHAN submitted to Financial Institution 5 were materially altered.  The original incorporation documents obtained from WCS show that, on December 28, 2017, HBS appointed SKD as Mahenjo's initial director.  The altered version of the incorporation documents obtained from Financial Institution 5 falsely state that on December 28, 2017, HBS appointed MOHAN as Mahenjo's initial director.  The

COMPLAINT/*United States v. Mukund Mohan* - 10

altered incorporation documents were misleading in that they indicated that MOHAN owned and controlled Mahenjo in 2017 when, in truth, he did not.

31.     Based on records obtained from JPMC, on June 2, 2020, MOHAN opened a bank account at JPMC in the name of Mahenjo (account number ending 9159).  In the account opening application, which MOHAN signed, MOHAN used Address 1 and Telephone Number 1, which, based on records obtained from T-Mobile, belonged to MOHAN.  MOHAN also submitted the same altered incorporation documents that he submitted in support of Mahenjo's PPP loan application.

32.     Based on records obtained from Financial Institution 5, Mahenjo's PPP loan application was approved on June 3, 2020.  MOHAN digitally signed the PPP loan documents using an IP address which, based on records obtained from CenturyLink, was associated with Address 1 (which is MOHAN's residence).

33.     Based on records obtained from JPMC and Financial Institution 5, on June 4, 2020, Financial Institution 5 transferred $431,250 in PPP loan proceeds via an interstate FedWire from its account in the Western District of Washington to Mahenjo's bank account with JPMC (account number ending 9159).

*Monetary Transactions in Criminally Derived Property of a Value Greater Than $10,000*

34.     Based on records obtained from Azlo, a financial institution that provides online business banking services, on April 10, 2020, an individual purporting to be MOHAN's wife submitted an online application to open a bank account in Zigantic's name.  Zigantic's Azlo account (number ending 3419) was opened with a zero balance.

35.     As described above in paragraphs 8 through 14, on May 1, 2020, MOHAN submitted a fraudulent application to Financial Institution 2 for a PPP loan on behalf of Zigantic for $304,830.

36.     Based on records obtained from Financial Institution 2, on May 2, 2020, an employee from Financial Institution 2 sent an email to MOHAN informing him that Zigantic's application had been approved and MOHAN responded with an email providing

wire transfer instructions so that Financial Institution 2 could wire the fraudulently obtained PPP loan proceeds to Zigantic's Azlo account:

> Hi ….
>
> Our bank details are below:
>
> Routing number: 062001186
>
> Account number: XXXXXX3419
>
> Zigantic LLC
>
> Azlo Bank.
>
> Business Address: [Address 1]

37.     Based on records obtained from Azlo, on May 14, 2020, Financial Institution 2 wired the fraudulently obtained PPP loan proceeds to Zigantic's Azlo account. At the time Financial Institution 2 wired the PPP loan proceeds to Zigantic's Azlo account, that account only had a balance $1,641.89.

38.     Based on records obtained from JPMC, on May 6, 2020, MOHAN opened a bank account at JPMC in the name of Expect Success (number ending 8877), which MOHAN controls.

39.     Based on records obtained from Azlo, on May 18, 2020, an ACH transfer in the amount of $221,471 was made from Zigantic's Azlo account to Expect Success's JPMC account.  The $221,471 ACH transfer, however, failed due to a processing error on Azlo's part and the money was returned to Zigantic's Azlo account.

40.     Based on records obtained from Azlo, between May 20, 2020 and May 28, 2020, five ACH transfers – totaling $231,471 – were made from Zigantic's Azlo account to a brokerage account at Robinhood (number ending 4609).   Robinhood is financial services company that provides a mobile app and website that offer people the ability to invest in securities.  Based on records obtained from Robinhood, the brokerage account belongs to MOHAN.  The five ACH transfers from Zigantic's Azlo account to MOHAN's Robinhood account are detailed below:

COMPLAINT/*United States v. Mukund Mohan* - 12

| Date | Amount | Originating Account | Receiving Account |
|------|--------|---------------------|-------------------|
| May 20, 2020 | $50,000 | Zigantic's Azlo Acct. | MOHAN's Robinhood Acct. |
| May 26, 2020 | $50,000 | Zigantic's Azlo Acct. | MOHAN's Robinhood Acct. |
| May 27, 2020 | $50,000 | Zigantic's Azlo Acct. | MOHAN's Robinhood Acct. |
| May 28, 2020 | $50,000 | Zigantic's Azlo Acct. | MOHAN's Robinhood Acct. |
| June 3, 2020 | $31,471 | Zigantic's Azlo Acct. | MOHAN's Robinhood Acct. |

**CONCLUSION**

41.     Based on the above facts, I respectfully submit that there is probable cause to believe that MUKUND MOHAN did willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, and attempting to do so, transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Sections 1343 and 2.

42.     Based on the above facts, I further respectfully submit that there is probable cause to believe that MUKUND MOHAN did knowingly cause and engage in, and attempt to cause and engage in, the following monetary transaction by, through, and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, in violation of Title 18, United States Code, Sections 1957(a) and 2.

JAMES SHIELDS, Complainant
Senior Special Agent, FHFA-OIG

The above-named agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit, and based on the Complaint and Affidavit, the Court

COMPLAINT/*United States v. Mukund Mohan* - 13

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  hereby finds that there is probable cause to believe the Defendant committed the offenses

2  set forth in the Complaint.

3          Dated this 21st day of July, 2020.

4

5

6  _____

7  BRIAN A. TSUCHIDA
   Chief United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT/*United States v. Mukund Mohan* - 14